UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 1:22-cr-34-SE |
| | ) |
| ANTHONY SILVA | ) |

## PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(A) and (C) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Jane E. Young, United States Attorney for the District of New Hampshire, and the defendant, Anthony Silva, and the defendant's attorney, Scott Gleason, Esquire, enter into the following Plea Agreement:

1. <u>The Plea and The Offenses</u>.

The defendant agrees to waive his right to have this matter presented to a grand jury and plead guilty to counts 1 through 3 of a Superseding Information charging him with Wire Fraud, in violation of 18 U.S.C. § 1343, Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, and Mail Fraud, in violation of 18 U.S.C. § 1341.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement. The United States also agrees to move to dismiss the underlying indictment when the defendant is sentenced.

2. <u>The Statute and Elements of the Offenses</u>.

    A.    With respect to Count One charging wire fraud:

Title 18, United States Code, Section 1343 provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of [interstate] wire . . . shall be

fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that there was a scheme, substantially as charged in the indictment, to obtain money or property by means of false or fraudulent pretenses;

Second, that the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

Third, that the defendant knowingly and willfully participated in this scheme with the intent to defraud; and

Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, the defendant caused an interstate wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate wire communication would be used, on or about the date alleged.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2022 Revisions,* Instruction 4.18.1343, https://www.med.uscourts.gov/sites/med/files/crpjilinks.pdf.

    B.    With respect to Count Two charging aggravated identity theft:

Title 18, United States Code, Section 1028A provides, in pertinent part:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), [including Wire Fraud,] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant committed the felony violation of wire fraud;

Second, that during and in relation to the felony violation of wire fraud, the defendant knowingly used a means of identification described in the Superseding Information, without lawful authority;

Third, that the means of identification actually belonged to another person; and

Fourth, that the defendant knew that the means of identification belonged to another person.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2022 Revisions,* Instruction 4.18.1028A, https://www.med.uscourts.gov/sites/med/files/crpjilinks.pdf.

    C.    With respect to Count Three charging mail fraud:

Title 18, United States Code, Section 1341 provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises [and] for the purpose of executing such scheme or artifice or attempting to do so . . . knowingly causes to be delivered by mail . . . according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any . . . matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341.

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that there was a scheme, substantially as charged in the indictment, to obtain money or property by means of false or fraudulent pretenses;

Second, that the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

Third, that the defendant knowingly and willfully participated in this scheme with the intent to defraud; and

Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, the defendant caused the United States mail to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, the United States mail would

be used, on or about the date alleged.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2022 Revisions,* Instruction 4.18.1341, https://www.med.uscourts.gov/sites/med/files/crpjilinks.pdf.

3. <u>Offense Conduct</u>.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offenses beyond a reasonable doubt:

A.   Credit Card Fraud

American Express (AMEX) is a financial services company that offers credit card services. It maintained servers for processing credit card transactions in North Carolina and Arizona.

Beginning in or around October 2021 through in or around December 2021, in the District of New Hampshire and elsewhere, the defendant participated in a scheme to defraud AMEX. He used personal identifying information of other persons, including their names, Social Security numbers, and dates of birth, to apply for 15 AMEX credit cards in the names of 12 individuals. The defendant also sometimes submitted false driver's licenses with the victims' names and other personal identifying information, but with the defendant's photograph.

Subpoena returns showed that two IP addresses linked to the defendant's apartment complex in Hampton, New Hampshire, were used to apply for the credit cards.

On the AMEX applications, the defendant listed mailing addresses he could readily access. For example, he usually listed mailing addresses of other units at his apartment complex that shared a communal mailbox, which allowed him to intercept mail addressed to other units

The defendant then used the AMEX cards to make personal purchases at stores such as

Wal-Mart, Home Depot, and Victoria's Secret. Store security camera footage recorded the defendant making some of those purchases.

For example, as charged in Counts 1 and 2 of the Superseding Information, on September 22, 2021, the defendant submitted an application for an AMEX credit card in the name of Person 1. The defendant used Person 1's real name, date of birth, and Social Security number to apply for the card. As part of the account verification process, the defendant also submitted a photo of a Massachusetts driver's license purportedly belonging to Person 1. The license included the defendant's photograph, but Person 1's name and date of birth. AMEX approved the application and mailed a credit card ending in 51000 to the defendant's apartment complex. On October 2, 2021, the defendant used the card in Person 1's name to make a $2,019.76 purchase at a Wal-Mart in Plaistow, New Hampshire. The defendant was observed on camera making this purchase.

      B.    Unemployment Fraud

Unemployment Insurance (UI) is a joint state and federal program that provides monetary benefits to eligible beneficiaries. UI payments are intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits, including the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance Program (LWAP).

Beginning in or around April 2020 through in or around May 2021, in the District of New Hampshire and elsewhere, the defendant participated in a scheme to defraud UI programs. The defendant submitted UI applications to multiple states, including Vermont, using other persons'

identities. The defendant usually directed that the UI payments be mailed as checks to his Manchester, New Hampshire, address which he then deposited into one of 32 trust accounts he controlled at Citizens Bank. Other UI benefits were direct deposited into accounts the defendant controlled.

For example, as charged in Count 3 of the Superseding Information, the defendant applied for UI benefits from the Vermont Department of Labor using Person 2's identity. On November 2, 2020, the Vermont Department of Labor mailed a check for $513.00 in Person 2's name to the defendant's Manchester, New Hampshire, address. The defendant deposited that check into the "Trump Resistance League" account he controlled at Citizens Bank.

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A. With respect to Counts One (wire fraud) and Three (mail fraud), a maximum prison term of 20 years (18 U.S.C. §§ 1343, 1341), and with respect to Count Two (aggravated identity theft), a mandatory consecutive sentence of 2 years to be imposed consecutively to any other term of imprisonment imposed (18 U.S.C. § 1028A);

B. With respect to Counts One (wire fraud) and Three (mail fraud), a maximum fine of $250,000 or twice the gross gain or loss, whichever is greater (18 U.S.C. § 3571(b)(3) or (d));

C. With respect to Counts One (wire fraud) and Three (mail fraud), a term of supervised release of not more than 3 years (18 U.S.C. §§ 3559(a)(3); 3583(b)(2)), and with respect to Count Two (aggravated identity theft), a term of supervised release of not more than one year (18 U.S.C. § 3559(a)(5); 3583(b)(3). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D. A mandatory special assessment of $300, $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)); and

E. In addition to the other penalties provided by law, the Court may order the

defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, he will provide the United States with a financial disclosure statement and supporting financial documentation.

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

    A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

    B.    Respond to questions from the Court;

    C.    Correct any inaccuracies in the pre-sentence report;

    D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any

source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. 11(c)(1)(C), the United States and the defendant stipulate and agree to the following:

    (a)    60 months' imprisonment is an appropriate disposition of this case; and

    (b)    The defendant is liable for no less than $699,496.14 in restitution, broken down as follows:

        (i)    $59,694.14 payable to American Express;

        (ii)    $451,779 payable to the Vermont Department of Labor; and

        (iii)    $188,023 payable to the Massachusetts Department of Unemployment Assistance.

The parties intend the above stipulations to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty plea.

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. <u>Acceptance of Responsibility</u>.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the

defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

- A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

- B. Challenges the United States' offer of proof at any time after the plea is entered;

- C. Denies involvement in the offense;

- D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

- E. Fails to give complete and accurate information about his financial status to the Probation Office;

- F. Obstructs or attempts to obstruct justice, prior to sentencing;

- G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

- H. Fails to appear in court as required;

- I. After signing this Plea Agreement, engages in additional criminal conduct; or

- J. Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States

in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. <u>Waiver of Trial Rights and Consequences of Plea.</u>

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

    A.    To plead not guilty or to maintain that plea if it has already been made;

    B.    To be tried by a jury and, at that trial, to the assistance of counsel;

    C.    To confront and cross-examine witnesses;

    D.    Not to be compelled to provide testimony that may incriminate him; and

    E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. <u>Acknowledgment of Guilt; Voluntariness of Plea.</u>

The defendant understands and acknowledges that he:

A. Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B. Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C. Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D. Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E. Is completely satisfied with the representation and advice received from his undersigned attorney.

10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The

defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12. Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Superseding Information in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made

to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

13. Forfeiture

The defendant agrees to immediately and voluntarily forfeit to the United States his interest, if any, in any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of his guilty plea, including, but not limited to the following accounts held at Citizens Bank:

| Account Number | Account Balance | Account Title | Trustee |
| --- | --- | --- | --- |
| 3315712869 | $10,517.00 | Peaceful Protesters Bail Fund Trust | Anthony M. Silva |
| 3315712877 | $10,414.00 | Trans Diversity Alliance Trust | Anthony M. Silva |
| 3315712885 | $14,265.50 | Misgendering Kills Trust | Anthony M. Silva |
| 3315712893 | $14,265.50 | Trump Resistance League Trust | Anthony M. Silva |
| 3315712915 | $9,018.77 | Us Too Trust | Anthony M. Silva |
| 3315712923 | $10,598.50 | Resist Trumpism Trust | Anthony M. Silva |
| 3315712931 | $10,705.75 | BLM New England Trust | Anthony M. Silva |
| 3315712958 | $11,690.37 | Progress is Simple Trust | Anthony M. Silva |
| 3315712966 | $13,372.90 | Anti-Drumpf League Trust | Anthony M. Silva |
| 3315712974 | $9,001.00 | Peaceful Protesters Legal Def Fund Trust | Anthony M. Silva |
| 3315712982 | $12,161.62 | Borderless World Society Trust | Anthony M. Silva |
| 3315713180 | $15,337.00 | Victim Trust[1] | Anthony M. Silva |
| 3315713202 | $8,810.00 | Victim Trust | Anthony M. Silva |
| 3315713210 | $15,850.00 | Victim Trust | Anthony M. Silva |
| 3315713229 | $9,000.00 | Victim Trust | Anthony M. Silva |
| 3315713237 | $15,037.00 | Victim Trust | Anthony M. Silva |
| 3315713318 | $15,055.00 | Victim Trust | Anthony M. Silva |
| 3315713326 | $14,524.00 | Victim Trust | Anthony M. Silva |
| 3315713334 | $5,000.00 | Victim Trust | Anthony M. Silva |
| 3315713342 | $4,678.00 | Victim Trust | Anthony M. Silva |

[1] The "Victim Trust" accounts are held in the names of individuals whose identities the defendant misused.

| 3315713350 | $16,663.00 | Victim Trust | Anthony M. Silva |
| 3315713369 | $13,693.00 | Victim Trust | Anthony M. Silva |
| 3315713377 | $15,037.00 | Victim Trust | Anthony M. Silva |
| 3315713385 | $16,663.00 | Victim Trust | Anthony M. Silva |
| 3315713393 | $15,037.00 | Victim Trust | Anthony M. Silva |
| 3315713407 | $10,660.00 | Victim Trust | Anthony M. Silva |
| 3315713415 | $12,320.00 | Victim Trust | Anthony M. Silva |
| 3315713423 | $14,224.00 | Victim Trust | Anthony M. Silva |
| 3315713431 | $15,781.00 | Victim Trust | Anthony M. Silva |
| 3315713458 | $57,083.24 | Victim Trust | Anthony M. Silva |
| 3315713466 | $13,006.00 | Victim Trust | Anthony M. Silva |
| 3315713504 | $9,000.00 | Victim Trust | Anthony M. Silva |

The defendant represents and warrants that he is the sole and exclusive owner of the funds in the above-listed Citizens Bank accounts, and that he has all legal right to transfer the same without the intervention of any other third party. The defendant agrees to execute and deliver to the Government all such documents and instruments and to do all such other acts and things as may be required to secure the defendant's obligations hereunder, to record and file all such documents and instruments, and to do any and all other acts, at such time or times, in such manner and at such place or places, all as may be necessary to establish, validate, preserve, protect and perfect the funds listed in Citizens Bank and identified in the chart above, and to complete the forfeiture of the entirety of his interest to the United States.

The defendant acknowledges that all of the above-described forfeitable accounts are subject to forfeiture as property constituting or derived from any proceeds the defendants obtained, directly or indirectly, from the mail fraud scheme involving fraudulently obtained unemployment benefits charged in Count Three of the Superseding Information.

Pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), and 28 U.S.C. § 2461(c), the defendant further agrees to forfeit to the United States all of his right, title, and interest in any property, real or personal, which constitutes or is derived from proceeds the defendant obtained

that are traceable to the wire fraud, identity theft, and mail fraud offenses charged in Counts One through Three of the Superseding Information. The defendant agrees that the aggregate value of such property is no less than $699,496.14; that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists; and that the United States is therefore entitled to forfeit substitute assets equal to the value of the proceeds obtained the defendant, in an amount no less than $699,496.14, the exact amount to be determined prior to sentencing (the "Money Judgment"). The defendant consents to the entry of an order requiring the defendant to pay the Money Judgment, in the manner described below (the "Order"), and that the Order will be final as to the defendant at sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets. The defendant further agrees that upon entry of the Order, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Money Judgment in full or in connection with any petitions filed with regard to proceeds or substitute assets, including depositions, interrogatories, and requests for production of documents, and the issuance of subpoenas.

All payments made in full or partial satisfaction of the Money Judgment shall be made by postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating the defendant's name and case number on the face of the check; and shall be delivered by mail to the United States Attorney's Office, District of New Hampshire, Attn: Asset Forfeiture Unit, 53 Pleasant Street, 4th Floor, Concord, New Hampshire 03301.

The defendant agrees and consents to the forfeiture of his interest in these assets pursuant to any criminal, civil and/or administrative forfeiture, and agrees to waive any right he may have to seek remission or mitigation of the forfeiture of these assets.

None of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in any manner, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including the following: (1) the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed. R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3) failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument and announcement of the forfeiture at sentencing and incorporation of the forfeiture in the judgment. The defendant further acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

The defendant waives and releases any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not.

The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

14. Waivers.

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on

the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

15. No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

                                      JANE E. YOUNG
                                      United States Attorney

Date: 10/25/22                  By: _____
                                      Alexander S. Chen
                                      Special Assistant United States Attorney
                                      MA Bar Association #698458
                                      53 Pleasant St., 4th Floor
                                      Concord, NH 03301
                                      alexander.chen@usdoj.gov

                                      John J. Kennedy
                                      Assistant United States Attorney
                                      NH Bar #19557
                                      53 Pleasant St., 4th Floor
                                      Concord, NH 03301
                                      john.kennedy2@usdoj.gov

The defendant, Anthony Silva, certifies that he has read this 20-page Plea Agreement and that he fully understands and accepts its terms.

Date: 10/24/22

_____
Anthony Silva, Defendant

I have read and explained this 19-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 10-24-22

_____
Scott Gleason, Esquire
Attorney for Anthony Silva