UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

_____

United States of America
     Plaintiff,

                                 Docket No. 1:22-cr-34-SE

        v.

Anthony Silva,
        Defendant

_____

## MOTION TO WITHDRAW PLEA

Anthony Silva moves to withdraw the guilty plea he entered on November 7, 2022. The Government objects.

The plea agreement and colloquy portray a binding agreement where Mr. Silva would serve a fixed term in prison and pay a finite sum of restitution. However, Mr. Silva, based on the representations of counsel, believed his counsel could, and would, continue to advocate for lower sentences and payments after the entry of the plea, based largely on Mr. Silva's prospective cooperation. His belief is corroborated by texts and emails. Because Mr. Silva believed that the plea agreement was not the "last word" on what his sentence would be, he did not enter into that agreement knowingly and voluntarily. U.S. Const. Amends. V, VI; United States v. Ruiz, 536 U.S. 622, 629 (2002) ("[T]he Constitution insists, . . . , that the defendant enter a guilty plea that is

"voluntary" and that the defendant must make related waivers knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.") (Citation and quotation omitted).

In support of his motion, Mr. Silva states:

1. On March 21, 2022, he was indicted on charges of Wire Fraud, False Representation of a Social Security Number, and Aggravated Identity Theft. He has been at liberty on pretrial conditions since his initial appearance, on March 24, 2022.

2. While represented by Attorney Scott Gleason, the parties entered into a plea agreement which contemplated Mr. Silva's plea of guilty to a three-count substituted information alleging Wire Fraud, Aggravated Identity Theft, and Mail Fraud. Under the binding agreement, Mr. Silva would, in pertinent part, serve sixty months in prison and be liable for nearly $700,000 in restitution.

3. Mr. Silva pled guilty on November 7, 2022. Before his sentencing, he asked Attorney Gleason to withdraw, stated that he wanted to represent himself, and moved to withdraw his plea.

4. The Court assigned counsel to meet with Mr. Silva and scheduled a status conference within two weeks of receiving Mr. Silva's motions. At the conference, on March 27, 2023, Mr. Silva stated that he did not want to represent himself, and he wanted the assistance of counsel in seeking to withdraw his plea. The Court stated that the matter would proceed on an expedited basis, with Mr. Silva's motion due on or before April 26, 2023, and

the Government's objection due within fourteen days thereafter. Mr. Silva stated at the status conference, and reasserts here, that he wishes to have the opportunity to supplement the motion with testimony before the matter is submitted. See United States v. Pulido, 566 F.3d 52, 57 (1st Cir. 2009) ("[A] defendant is entitled to an evidentiary hearing [on a motion to withdraw plea] unless the facts alleged are contradicted by the record or are inherently incredible and to the extent that they are merely conclusions rather than statements of fact.") (Quotation omitted).

   **A.      Legal standard.**

   5.      A defendant may seek to withdraw his plea after it is entered but before he is sentenced if there is a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); United States v. Gardner, 5 F.4th 110, 114 (1st Cir. 2021). "The overall standard is 'liberal' . . . and 'permissive' . . . ." Id. (citations omitted); but see United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014) ("Although this gives a defendant the benefit of a permissive standard, it does not endow him with an unfettered right to retract a guilty plea.").

   6.      "[R]elevant considerations include: (1) whether the original plea was knowing, intelligent, and voluntary and in compliance with Rule 11, (2) the strength of the reason for withdrawal, (3) the timing of the motion to withdraw, (4) whether the defendant has a serious claim of actual innocence, (5) whether the parties had reached (or breached) a plea agreement, and (6) whether the

government would suffer prejudice if withdrawal is permitted."[1] <u>Gardner</u>, 5 F.4th at 114 (citations omitted).

7.     The first factor – the nature and character of the plea – is the most important. <u>United States v. Fonseca</u>, 49 F.4th 1, 6 (1st Cir. 2022) ("The most important consideration is whether the plea was knowing and voluntary.") <u>United States v. Isom</u>, 580 F.3d 43, 52 (1st Cir. 2005) (same).  Because it is also the factor upon which Mr. Silva primarily relies, he will address it independently of the others.

8.     In applying the first factor, the Court must "assess whether the defendant's plea was 'free from coercion,[2] . . . and whether he understood the charges, and . . . consequences of the guilty plea.'" <u>United States v. McMullin</u>, 568 F.3d 1, 9 (1st Cir.2009) (quoting <u>United States v. Pagan-Ortega</u>, 372 F.3d 22, 28 (1st Cir. 2004); <u>see</u> <u>also</u> <u>Isom</u>, 85 F.3d at 835 ("We have identified three 'core concerns' of Rule 11: 1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea.") (Quotation omitted).

9.     Mr. Silva's guilty plea was not knowing, voluntary, and intelligent because it was the product of his attorney's ineffective assistance.[3]  <u>See</u> <u>United</u>

---

[1] Regarding the last factor, Mr. Silva will await the Government's argument to respond, but he notes that "the burdens that inevitably accompany any withdrawal [such as] ... proceeding to trial" do not constitute adequate prejudice.  <u>United States v. Fonseca</u>, 49 F.4th 1, 10 (1st Cir. 2022) (quotation omitted).

[2] Mr. Silva does not allege coercion or improper influence by the Court or the Government.

[3] "By claiming ineffective assistance of counsel…, [Mr. Silva] has impliedly waived attorney-client privilege with respect to communications with Attorney [Gleason] necessary to prove or disprove his claim."  <u>United States v. Goodwyn</u>, 797 F.Supp.2d 177, 182 (D. Mass. 2011).

States v. Fernandez-Santos, 856 F.3d 10, 17 (1st Cir. 2017); United States v. Dunfee, 821 F.3d 120, 128 (1st Cir. 2016). "[T]he challenger must demonstrate that counsel's performance fell below an objective threshold of reasonable care and that this deficient performance prejudiced him." United States v. Caramadre, 807 F.3d 359, 371 (1st Cir. 2015). "In the plea-withdrawal context, the prejudice element requires a showing of a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Id. (quotation omitted).

**B.    Mr. Silva's plea was not knowing, voluntary, and intelligent.**

10.    In assessing the character of Mr. Silva's plea, the Court will review the colloquy. See Isom, 85 F.3d at 835 (stating Court will review totality of circumstances surrounding Rule 11 hearing).

11.    The colloquy does not reveal that Mr. Silva's counsel led him to believe that he and the Government had reached an agreement whereby he would plead guilty with the possibility of cooperation after the fact of the plea, meaning that the terms of the plea functioned as a cap on his exposure, and his cooperation could result in a reduction in the terms of incarceration and restitution. Mr. Silva asked Attorney Gleason to withdraw, and pursued this claim, when he realized he had been misled.

12.    Undersigned requested from former counsel his communications with Mr. Silva. Through an assistant, former counsel sent a series of nine

emails, each of which had attached to it several Outlook messages.[4]  In addition, Mr. Silva provided the undersigned with a series of messages, mostly texts, between September 9, 2022, and March 11, 2023.  Those messages contain date and time stamps, and are either screenshots from his cellphone, or printed emails.

13.     The messages reflect Mr. Silva's belief that despite the entry of the plea pursuant to the agreement on November 7, Attorney Gleason would contact the Government on Mr. Silva's behalf, make clear his willingness to cooperate, and endeavor to make efforts to reduce Mr. Silva's prison exposure and restitution amount below the terms stated in the plea agreement.[5]  There would be no cause for Mr. Silva to discuss cooperation at that juncture if he did not believe it was possible – and there would be no need for Mr. Silva to cooperate unless it would benefit him.

14.     At the request of Attorney Gleason, on October 25, Mr. Silva sent an email to Attorney Gleason providing details about the nature and extent of the cooperation he could provide.  On November 9, two days after the plea, Mr. Silva, at Attorney Gleason's request, emailed Attorney Gleason with more

---

[4] The messages Attorney Gleason sent lacked date or time stamps.  They appeared to be reproductions of texts to and from Mr. Silva as opposed to emails.  As explained below, they correspond with texts and emails Mr. Silva produced.

[5] Mr. Silva does not allege that the Government was a party to post-agreement cooperation negotiations.  The Government's lead counsel told the undersigned there were no substantive communications between Attorney Gleason and the Government between November 7, and the date Attorney Gleason withdrew.  Mr. Silva signed the agreement because Attorney Gleason told Mr. Silva that he could provide cooperation thereafter; he gave Attorney Gleason information about cooperation with the expectation Attorney Gleason would continue to negotiate with the Government; Attorney Gleason told Mr. Silva that his efforts at negotiation were rebuffed; but in fact, Attorney Gleason never engaged in any negotiation, nor informed Mr. Silva that the Government was not interested in his cooperation.

information about prospective cooperation.  Similar entreaties continued for weeks thereafter.  For example, on December 2, Mr. Silva texted that he had been trying to get in touch with Attorney Gleason for two weeks and that Mr. Silva had "updates on [his] proffer, and people are calling [Silva] every day.  Not sure what to do about that."  On December 5, Attorney Gleason texted Mr. Silva to set up an appointment for the PSR.  Mr. Silva replied, "I will today. What about chen (sic)?  That is my concern.  I set up [the PSR interview] for Thursday but I'm not going to wait that long to hear what's going on with the only thing I care about."  In the same thread, which continues into December 8 and 9, Mr. Silva and Attorney Gleason appear to have met at the latter's office at around 6:00 p.m. on December 8.  The December 9 thread continued into December 16: "Just so we're on the same page, when you discuss the proffer with [Chen] it might be a good idea to remind him that he won't need to get permission from other states for me to let me work in NH.  I can provide him with enough to get him convictions inside of a week of getting a green light."  If Mr. Silva believed the terms of the plea agreement were fixed, there would have been no reason for him to ask Attorney Gleason to "talk to Chen" about much of anything.

15.    On December 28, Mr. Silva asked Attorney Gleason if there were further updates.[6]  On February 9, Mr. Silva said, I am going to go over the [PSR] report carefully and and (sic) send comments later this week.  Right now

---

[6] In context, the allusion is to updates from Attorney Chen about cooperation.

I just want to clarify what i (sic) can do in NH."[7]  On February 16, there are

further text exchanges about the PSR and the proffer, with Mr. Silva asking

Attorney Gleason, "Is Chen aware of what I am really offering to do?  I don't

want to get a no from the FBI based on them not being aware what I can really

do."[8]  This text concurs with an Outlook message Attorney Gleason provided.[9]

Attorney Gleason and Mr. Silva scheduled a time for a call "on Tuesday at

3:30," which corresponds with February 21.  Two days later, Mr. Silva told

Attorney Gleason, "I can literally do anything.  I can't think of a single thing I

can't do."[10]

16.    In texts that start on March 2 and continue until March 11, it

became clear that communication between Mr. Silva and Attorney Gleason had

broken down.  Mr. Silva accused Attorney Gleason of lying to him.  Mr. Silva

requested that Attorney Gleason withdraw, and stated he intended to represent

himself.

17.    Mr. Silva represents that Attorney Gleason led him to believe

before, and after he entered the plea agreement, that the agreement was a

_____

[7] Attorney Gleason forwarded an Outlook message that is identical.

[8] In a series of texts, sent on Saturday March 4, between 2:36 p.m. and 2:38 p.m., Mr. Silva
explained in detail the assistance he was willing to provide. They are in the same vein as the
series of other texts in which he asks Attorney Gleason to make clear to the Government what
he can do.  Attorney Gleason forwarded undated Outlook messages containing the same
information.

[9] That message states, "I reread the proffer I sent to [your assistant] and saw how scanty it
was.  It makes no mention of drugs or gangs, and gives few details.  I didn't thinks it was
important because you were so certain they would take [other information].  I sent you the full
details last week.  Is Chen aware of what I'm really offering to do?  I don't want to get a no from
the FBI based on them not being aware of what I can really do."

[10] Attorney Gleason forwarded the identical message.

means to the end of further reducing his liability, and that there was no way to avoid signing it if he wished to reduce his liability through cooperation. That advice induced him to enter the agreement. But for the advice Mr. Silva would not have accepted a sentence of sixty months in prison and nearly $700,000.00 in restitution. Under these circumstances – and despite the Rule 11 colloquy – Mr. Silva has set forth a "fair and just reason" to withdraw his plea. See Pulido, 566 F.3d at 59-60 ("[W]e have typically disregarded representations at a plea colloquy only when the allegations were highly specific and usually accompanied by some independent corroboration.") (Quotation omitted) (emphasis in original); United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005) (finding deficient performance based on counsel's mischaracterization of possible sentence); cf. United States v. Santiago Miranda, 654 F.3d 130, 138-39 (1st Cir. 2011) (finding lack of sufficient, independent corroboration of ineffectiveness claim).

18.    Mr. Silva alleges ineffective assistance in an additional respect. The PSR, at Paragraphs 16-17, identifies restitution claimants, primarily as the result of alleged fraud on Massachusetts victims. In communications with Attorney Gleason before the plea, Mr. Silva told Attorney Gleason on September 9 that he wanted a complete breakdown of the restitution amount.[11] He told Attorney Gleason on October 21 that he would not sign an agreement requiring

---

[11] Attorney Gleason forwarded an Outlook message with the same statement: "Try as I might, I'm not able to get into the hard drive. I don't want to delay any more. Just tell him we have a lower restitution number than him and ask for a complete breakdown. The important thing is getting the aggravated count dropped and getting the time down anyway. We can worry about the money issue later."

him to pay nearly $700,000.00 unless Attorney Gleason knew "for sure [he] could do something about it later."[12]

19.    According to Mr. Silva, he saw the names in the table depicted in Paragraph 16-17 for the first time on February 9, 2023.  This was despite several weeks of asking Attorney Gleason for substantiation of all restitution figures, including a discussion of the matter on October 24, 2022, which was the day Mr. Silva signed the plea agreement.  It was only when Mr. Silva realized there would be no possibility of a reduction of his sentence or restitution based on his cooperation that he began to seek to withdraw his plea. Had Mr. Silva known he would be required to repay the entire sum, he would not have signed off on the agreement.

### C.    <u>The other plea withdrawal factors.</u>

20.    Turning to the other factors, the second (the strength of the reason for withdrawal) and fifth (whether the parties had reached an agreement) weigh in Mr. Silva's favor if the Court credits Mr. Silva's above claims.  Ineffective advice about the prospects for further negotiation with the Government after the entry of the agreement induced Mr. Silva to plead guilty and undermined his understanding of his options before and at the sentencing hearing.  On the fifth factor, while objective markers indicate the parties had reached a plea agreement, Mr. Silva believed – again, based on his discussions with counsel – that he had a meaningful opportunity to continue to negotiate, and his counsel

---

[12] Mr. Silva never saw a restitution breakdown until he saw the PSR.

would act as his agent. The belief existed despite what the plea agreement stated, and it altered Mr. Silva's fundamental understanding of the agreement.

21.     Turning to the other factors, the second (the strength of the reason for withdrawal) and fifth (whether the parties had reached an agreement) weigh in Mr. Silva's favor if the Court credits Mr. Silva's above claims. Ineffective advice about the prospects for further negotiation with the Government after the entry of the agreement induced Mr. Silva to plead guilty and undermined his understanding of his options before and at the sentencing hearing. On the fifth factor, while objective markers indicate the parties had reached a plea agreement, Mr. Silva believed – again, based on his discussions with counsel – that he had a meaningful opportunity to continue to negotiate, and his counsel would act as his agent. The belief existed despite what the plea agreement stated, and it altered Mr. Silva's fundamental understanding of the agreement.

22.     With respect to innocence, "A defendant asserts a serious claim of actual innocence to establish a 'fair and just reason' to withdraw a guilty plea when he establishes legal or factual innocence." United States v. Fernandez-Santos, 136 F.Supp.3d 160, 164 (D. Puerto Rico 2015) (citing United States v. Negron–Narvaez, 403 F.3d 33, 36 (1st Cir. 2005)). "'To establish a legal innocence claim, a defendant must "make a factual argument that supports a legally cognizable defense.'" Id. (quoting United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007)). The absence of such a claim is not fatal to a motion to withdraw a plea. See Gardner, 5 F.4th at 119 (holding absence of plausible theory of innocence "is not fatal; it just counsels

against allowing withdrawal." (Citation and quotation omitted); <u>see</u> <u>also</u> <u>United</u>

<u>States v. Parilla-Tirado</u>, 22 F.3d 368, 373 (1st Cir. 1994) ("[A] defendant's

assertion of innocence may weight the scales in favor of withdrawal, and

conversely, the absence of a claim of innocence weights the opposite pan of the

scales.").

22.     Mr. Silva's primary claim is that he entered the plea under the

misleading premise that he would have the opportunity, before sentencing, to

secure a better sentence and lower restitution amount.  He does maintain that

he is innocent of aggravated identity theft because he did not know the

identities involved were those of real people.  <u>See</u> <u>Flores-Figueroa v. United</u>

<u>States</u>, 556 U.S. 646, 656 (2009) ("We conclude that § 1028A(a)(1) requires the

Government to show that the defendant knew that the means of identification

at issue belonged to another person.").  Mr. Silva plead guilty to the second

count of the information because Attorney Gleason told him that the

Government would not allow him to cooperate in exchange for a lower sentence

if he did not.

**D.     <u>Conclusion</u>.**

23.     Mr. Silva submits that he has set forth a "fair and just reason" in

support of his motion to withdraw his guilty plea.  This Court should hold an

evidentiary hearing on Mr. Silva's motion and should find, based on the totality

of the factors and circumstances, that he is permitted to withdraw his plea and

proceed to trial.  In the alternative, Mr. Silva requests that the Court decline to

accept the plea agreement which, by operation of that agreement, would allow him to withdraw his plea.

24. Because the motion adequately sets forth Mr. Silva's claim, no accompanying memorandum is necessary.

WHEREFORE, Mr. Silva requests that this Court:

(a.) Hold a hearing on this motion; and

(b.) Allow him to withdraw his plea.

Respectfully submitted,

ANTHONY SILVA

By his attorney,

ROTHSTEIN LAW LLC

Dated: April 21, 2023

By: /s/ David M. Rothstein
David M. Rothstein, N.H. #5991
100 High Street
Exeter, N.H.  03833
(603) 580-3980
rothsteindm@outlook.com

## CERTIFICATE OF SERVICE

I certify that I have served a copy of this motion this 21 day of April on Assistant United States Attorney Alexander Chen via ECF.

/s/ David M. Rothstein
David M. Rothstein