UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| UNITED STATES OF AMERICA | ) |
|---|---|
| v. | ) No. 22-cr-34-SE |
| ANTHONY SILVA, | ) |
| Defendant | ) |

## GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE

The Government moves for revocation of the defendant's order of release pursuant to 18 U.S.C. § 3148(b). As further detailed below, there is probable cause to believe that the defendant has committed a Federal felony while on release, namely, multiple violations of 18 U.S.C. § 1956(1)(1)(B)(i) (concealment money laundering). There are no conditions or combination of conditions of release that will assure that the defendant will not flee or pose a danger to the safety of any other person or the community, and, as such, the Court should enter an order of revocation and detention pending trial.

### I. PROCEDURAL BACKGROUND

On March 21, 2022, the defendant was charged in a 9-count indictment alleging wire fraud, false representation of a social security number and aggravated identity theft related to allegations that he opened various American Express (AMEX) credit cards in the names of others and used those cards to make purchases. The defendant appeared for his initial appearance on March 24, 2022, filled out a financial affidavit, and was appointed counsel. On April 21, 2022, counsel for the defendant moved to withdraw, and on April 26, 2022, the motion was granted. New counsel was appointed for the defendant the same day. On May 10, 2022, Attorneys Thomas and Scott Gleason filed appearances for the defendant.

1

The parties engaged in plea discussions and negotiations throughout the summer and early fall of 2022, and on October 25, 2022, the parties filed a plea agreement and information charging the defendant with three counts—wire fraud, aggravated identity fraud, and mail fraud—related to the previously discussed AMEX fraud as well as a scheme to defraud unemployment insurance providers. The plea was an agreement under Rule 11(c)(1)(C), whereby the parties stipulated to a sentence of 60 months in prison and $699,496.14 in restitution. Sentencing was eventually scheduled for March 13, 2023.

On March 6, 2023, counsel for the defendant moved to withdraw, and on March 8, 2023, the defendant moved to represent himself, as well as withdraw from his plea. The Court held a hearing on March 13, 2023, and granted the motion to withdraw. Attorney Rothstein was appointed the following day. After a period of discovery and a supplemental motion to withdraw the plea, the Court continued the hearing on the motion and allowed the parties to explore resolution. On July 24, 2023, the Government assented to the motion to withdraw from the guilty plea, and the Court granted the motion the following day.

The parties prepared a joint proposed schedule and trial was set for the two-week period beginning May 21, 2024. In September 2023, the defendant moved to amend his conditions of release, seeking to remove his curfew. At a hearing held on October 4, 2023, the defendant argued that he needed to work at night in order to perform his job for a sign company, and without the modification, he risked losing his housing. The Court ultimately amended his conditions and removed the curfew but required location monitoring software to be implemented on the defendant's phone.

Shortly after setting the new conditions, probation reported that it had been notified that the defendant had applied for a passport in July 2023. The Court held another bail review

hearing and further amended the conditions of release to prevent the defendant from applying for or obtaining a passport.

On December 20, 2023, the Grand Jury handed down a superseding indictment charging the defendant with 21 counts related to four fraud schemes. Among the schemes were the AMEX scheme, a Vermont Unemployment Insurance scheme, a Massachusetts Unemployment Insurance scheme, and a CARES Act Economic Impact Disaster Loan (EIDL) scheme. In the process of investigating these schemes for the superseding indictment, the Government has learned that the defendant has committed Federal crimes while on pretrial release in this case.

## II. COMMISSION OF NEW CRIMES WHILE ON RELEASE

Among the counts that the Grand Jury charged in its superseding indictment, were four counts related to CARES Act Fraud involving Economic Impact Disaster Loans. The Grand Jury found probable cause that the defendant applied for disaster loans from the SBA in the names of false and fraudulent business using personal identifying information on the loans that was not his own. The Grand Jury found that the SBA approved at least four loans submitted by the defendant in the names of these false and fraudulent businesses. The Grand Jury returned the four counts, 18s-21s, each related to the transmission of signed EIDL loan documents in the names of four different entities.

Counts 20s and 21s relate to fraudulent loans applied for and proceeds obtained in the names of P.G. d/b/a P.G. and A.B. d/b/a A.B. Each of these loans was funded in the amount of $150,000, with $149,900 being disbursed to a bank account, while $100 was retained as a processing fee. For the P.G. and A.B. loans, the proceeds were disbursed to accounts held in

these names at Stride Bank.[1] [Bates AS_USANH-00012485, 12577].[2] The P.G. Stride Bank account ending in 2705 was issued a debit card ending in 5262. [Bates 12820, 12823]. The A.B. Stride account ending in 0121 was issued a debit card ending in 5392. These debit cards were found during a search of the defendant's residence pursuant to a search warrant executed on March 24, 2022. [Bates 5136].

The A.B. account received the $149,900 disbursement from SBA on July 23, 2020. [Bates 8314]. The P.G. account received the $149,900 disbursement from SBA on the same day. [Bates 12823]. The Stride records show that the two debit cards associated with these accounts were often used in tandem to make similar purchases. For example, the first transactions after receiving the SBA funds on both cards occurred at "7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS." According to open-source information, FCTI provided ATM services for 7-Eleven stores. An excerpt from the records, found at Bates 8314 for A.B. and 12823 for P.G. is produced below:

---

[1] Stride Bank provides banking services to a financial technology company that it partners with, Chime. Chime offers users online accounts advertising no minimum balances or monthly service fees as well as other user-friendly features. Chime is not a bank, however, and the banking services and debit cards are provided by partners at Bancorp Bank or Stride Bank. These accounts at Stride Bank are part of this partnership with Chime.

[2] The citations will be to the Bates numbers included on the discovery produced by the Government to the defendant to more easily identify the documents relied up on by the Government. To the extent that specific documents are important to establishing probable cause of the offenses alleged, the Government will include them in this pleading and/or present them at the hearing scheduled for February 5, 2024.

| A.B. - 5392 | | |
|---|---|---|
| 7/25/2020 10:05 | 7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS | ($100.00) |
| 7/25/2020 10:05 | 7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS | ($400.00) |
| 7/25/2020 10:01 | 7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS | ($100.00) |
| 7/25/2020 10:01 | 7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS | ($400.00) |
| 7/23/2020 18:28 | SBAD TREAS 310, MISC PAY | $149,900.00 |

| P.G. - 5262 | | |
|---|---|---|
| 7/25/2020 10:05 | 7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS | ($100.00) |
| 7/25/2020 10:04 | 7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS | ($400.00) |
| 7/25/2020 10:00 | 7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS | ($100.00) |
| 7/25/2020 10:00 | 7ELEVEN-FCTI 85 SOUTH MAIN ST, MANCHESTER, NHUS | ($400.00) |
| 7/23/2020 18:28 | SBAD TREAS 310, MISC PAY | $149,900.00 |

The transactions are sequential in time and indicate that the same user was in control of both cards. This similarity continued for many of the transactions involving these cards. Relevant to this motion, the cards were used together to make a series of United States Postal Money Orders between July 27, 2020, and August 26, 2020. During that time period, 56 money orders were purchased in 18 transactions, totaling just under $56,000. [Bates 12993]. During each of those transactions, the total price of the purchased Money Orders was split between the A.B. 5392 card and the P.G. 5262 card.

For example, on July 29, 2020, three money orders were purchased in amounts of $1,000, $1,000, and $999, for a total of $2,999. The P.G. 5262 paid $1,000 of this price while the

5

remaining $1,999 was paid by the A.B. 5392 card. [Bates 12993]. The information from the Postal Money Order purchases is produced below:

| Debit Card Number | CardType | USPS Finance Site | Date of Transaction | Time of Transaction | Amount of Transaction | ECAPSeqNum | Money Order Numbers | Total Value of Money Orders per transaction |
|---|---|---|---|---|---|---|---|---|
| 5392 | IN | 3248000111 | 07/27/2020 | 13:06:37 | $1,999.00 | 20913219131 | 26401591765-26401591776-26401591787-26401591798-26401591800 | $5,000.00 |
| 5392 | IN | 3248110109 | 07/28/2020 | 15:31:18 | $999.00 | 21015226126 | 25496235448-25496235450-25496235461 | $2,999.00 |
| 5392 | IN | 3248110109 | 07/29/2020 | 13:46:52 | $1,999.00 | 21113221034 | 26698316826-26698316837-26698316848 | $2,999.99 |
| 5392 | IN | 3248000111 | 08/01/2020 | 12:29:20 | $1,000.00 | 21412228223 | 26401591912-26401591923-26401591934 | $2,999.99 |
| 5392 | IN | 3248000111 | 08/03/2020 | 15:54:40 | $1,499.00 | 21615219223 | 26401593317-26401593328-26401593330 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/04/2020 | 16:35:30 | $1,499.00 | 21716228310 | 26401598921-26401598932-26401598943 | $2,999.99 |
| 5392 | IN | 3248000111 | 08/05/2020 | 15:21:24 | $1,499.00 | 21815219246 | 26401591978-26401591980-26401591991 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/06/2020 | 16:38:57 | $1,499.00 | 21916224715 | 26401599292-26401599303-26401599314 | $2,999.99 |
| 5392 | IN | 3248000111 | 08/07/2020 | 14:55:07 | $1,499.00 | 22014227846 | 26119241741-26119241752-26119241763 | $2,999.00 |
| 5392 | IN | 3248110109 | 08/10/2020 | 15:51:40 | $1,000.00 | 22315226308 | 26432796587-26432796598-26432796600 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/11/2020 | 16:50:13 | $1,499.00 | 22416224835 | 26401599663-26401599674-26401599685 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/12/2020 | 13:39:45 | $1,499.00 | 22513228447 | 26809425088-26809425090-26809425101 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/13/2020 | 14:35:25 | $1,499.00 | 22614228468 | 26401595433-26401595444-26401595455 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/14/2020 | 15:06:35 | $1,499.00 | 22715227949 | 26401589728-26401589730-26401589741 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/15/2020 | 14:07:24 | $1,499.00 | 22814227986 | 26401589853-26401589864-26401589875 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/20/2020 | 16:34:12 | $1,999.00 | 23316228045 | 26809426247-26809426258-26809426260 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/21/2020 | 15:40:49 | $1,499.00 | 23415229410 | 26401595815-26401595826-26401595837 | $2,999.00 |
| 5392 | IN | 3248000111 | 08/26/2020 | 15:55:46 | $1,499.00 | 23915229465 | 26401592158-26401592160-26401592171 | $2,999.00 |

| Debit Card Number | CardType | USPS Finance Site | Date of Transaction | Time of Transaction | Amount of Transaction | ECAPSeqNum | Money Order Numbers | Total Value of Money Orders per transaction |
|---|---|---|---|---|---|---|---|---|
| 5262 | IN | 3248000111 | 7/27/2020 | 13:07:41 | $1,999.00 | 20913219132 | 26401591765-26401591776-26401591787-26401591798-26401591800 | $5,000.00 |
| 5262 | IN | 3248110109 | 7/28/2020 | 15:33:14 | $1,999.00 | 21015226127 | 25496235448-25496235450-25496235461 | $2,999.00 |
| 5262 | IN | 3248110109 | 7/29/2020 | 13:47:33 | $1,000.00 | 21113221035 | 26698316826-26698316837-26698316848 | $2,999.99 |
| 5262 | IN | 3248000111 | 8/1/2020 | 12:29:51 | $1,999.00 | 21412228224 | 26401591912-26401591923-26401591934 | $2,999.99 |
| 5262 | IN | 3248000111 | 8/3/2020 | 15:54:04 | $1,499.00 | 21615219222 | 26401593317-26401593328-26401593330 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/4/2020 | 16:34:58 | $1,499.00 | 21716228309 | 26401598921-26401598932-26401598943 | $2,999.99 |
| 5262 | IN | 3248000111 | 8/5/2020 | 15:20:52 | $1,499.00 | 21815219245 | 26401591978-26401591980-26401591991 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/6/2020 | 16:38:24 | $1,499.00 | 21916224714 | 26401599292-26401599303-26401599314 | $2,999.99 |
| 5262 | IN | 3248000111 | 8/7/2020 | 14:55:35 | $1,499.00 | 22014227847 | 26119241741-26119241752-26119241763 | $2,999.00 |
| 5262 | IN | 3248110109 | 8/10/2020 | 15:50:40 | $1,999.00 | 22315226307 | 26432796587-26432796598-26432796600 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/11/2020 | 16:50:42 | $1,499.00 | 22416224836 | 26401599663-26401599674-26401599685 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/12/2020 | 13:38:43 | $1,499.00 | 22513228446 | 26809425088-26809425090-26809425101 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/13/2020 | 14:34:49 | $1,499.00 | 22614228467 | 26401595433-26401595444-26401595455 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/14/2020 | 15:07:16 | $1,499.00 | 22715227950 | 26401589728-26401589730-26401589741 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/15/2020 | 14:06:50 | $1,499.00 | 22814227985 | 26401589853-26401589864-26401589875 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/20/2020 | 16:34:46 | $999.00 | 23316228046 | 26809426247-26809426258-26809426260 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/21/2020 | 15:41:30 | $1,499.00 | 23415229411 | 26401595815-26401595826-26401595837 | $2,999.00 |
| 5262 | IN | 3248000111 | 8/26/2020 | 15:56:20 | $1,499.00 | 23915229466 | 26401592158-26401592160-26401592171 | $2,999.00 |

Thus, to this point, the evidence shows that the defendant applied for EIDL loans in the names of A.B. and P.G., received those funds in bank accounts tied to debit cards that were found in the defendant's home, and then used those cards to withdraw money and purchase money orders in the summer of 2020.

Many of those money orders were later negotiated, and the United States Postal Inspection Service is able to retrieve copies of the cashed in money orders according to the assigned money order number. The cashed money orders all point back to the defendant.

  i. <u>Money Orders Paid to Trust Accounts</u>

On or around March 15, 2021, eight money orders were cashed in the names of 7 different trust accounts at J.P. Morgan Chase that the defendant had opened up with himself as

the trustee. [Bates 12842-12893].  Specifically those include:

| Date | Trust | Bates |
|---|---|---|
| 03/15/2021 | L. M. Trust | Bates 12854 |
| 03/15/2021 | L. M. Trust | Bates 12854 |
| 03/15/2021 | J. T. Trust | Bates 12859 |
| 04/27/2021 | G. R. Trust | Bates 12844 |
| 03/15/2021 | G. R. Trust | Bates 12861 |
| 03/15/2021 | N. P. Trust | Bates 12861 |
| 03/15/2021 | F. L. Trust | Bates 12874 |

7

| 03/15/2021 | E. H. Trust | Bates 12874 | [money order image] |

The defendant proffered at the January 29, 2024 hearing that these were accounts where he held money in trust for others. Chase closed these accounts in July 2021 and, as the defendant proffered, issued close out checks paid to the name of each trust. Again, as the defendant proffered at the hearing, when these checks were nearing the one-year expiration date, the defendant opened thirteen accounts at T.D. Bank matching the names of the JP Morgan Chase accounts and deposited these bank checks into those accounts. [Bates 10358-10723]. The money from the money orders detailed above, was, with the exception of the E.H. Trust, all transferred to the TD accounts as part of the July 2022 TD Bank openings.

    ii.    <u>Money Orders Paid to Anthony Silva</u>

Between on or about June 11, 2022, and July 11, 2022, all while the defendant was on release in this case, four money orders that were purchased with the EIDL funds were cashed, made payable to the defendant, totaling nearly $4,000. These were paid by "James Spencer" and "James Miller."

| Date | Amount | From | Bates |
|---|---|---|---|
| 6/11/2022 | $999 | James Spencer | Bates 12886 |
| 6/23/2022 | $1,000 | James Miller | Bates 12886 |
| 6/23/2022 | $1,000 | James Miller | Bates 12892 |
| 7/11/2022 | $1,000 | James Miller | Bates 12892 |

Between on or about September 12 and October 11, 2023, five more of the EIDL sourced money orders were cashed totaling just under $5,000, again made payable to the defendant, from James Miller, but with the added notation in the memo line that the payments were for "Rent."

| Date | Amount | From | Bates |
|---|---|---|---|
| 9/12/2023 | $999 | James Miller | Bates 12880 |
| 9/12/2023 | $999 | James Miller | Bates 12883 |

9

| 10/10/2023 | $999 | James Miller | Bates 12875 | | | |
|---|---|---|---|---|---|---|
| 10/11//2023 | $999 | James Miller | Bates 12852 | | | |
| 10/11/2023 | $999 | James Miller | 12855 | | | |

    iii.    Money Orders Paid to Gleason Law Offices

As noted, on May 10, 2022, Scott and Thomas Gleason filed appearances for the defendant in this matter. Also on May 10, 2022, thirteen of the money orders purchased with EIDL proceeds were deposited into Pentucket Bank, made payable to Gleason Law Offices, from Anthony Silva, with the memo line "legal fee." These money orders totaled $13,000. An example is produced below, but as explained below, the Government is not relying upon these money orders to establish a separate money laundering offense. Rather, this information is provided to both provide additional evidence tying the defendant to the purchase and disbursement of the EIDL funded money orders, as well as provide support for the Government's contention that the defendant is a flight risk and a danger to the community.



10

## III. ARGUMENT

For purposes of 18 U.S.C. § 3148, the Government has alleged that the defendant has violated a condition of his release, namely, that he not commit a Federal crime during the period of release. Specifically, the Government focuses on the 9 money orders paid to the defendant purportedly from third persons. The Government alleges that cashing of each of the 9 money orders is a violation of 18 U.S.C. § 1956(a)(1)(B)(i), also referred to as concealment money laundering. "To prove a violation of 18 U.S.C. § 1956(a)(1)(B)(i), the government must show that [the defendant] conducted financial transactions involving the proceeds of unlawful activity, knowing that the transactions involved the proceeds of unlawful activity, and that the transactions were designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." *United States v. McGauley*, 279 F.3d 62, 69 (1st Cir. 2002).

    i.    <u>The Defendant Committed Concealment Money Laundering</u>

The evidence supports a finding of probable cause on each element. First, there is probable cause that the defendant conducted financial transactions. 18 U.S.C. § 1956(c)(4) defines a financial transaction to mean "a transaction which in any way or degree affects interstate or foreign commerce . . . involving one or more monetary instruments . . . or a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." "Monetary instruments" include money orders. 18 U.S.C. § 1956(c)(5). The tendering of the money orders is clearly a transaction involving a monetary instrument and the transaction certainly had a "minimal effect" on interstate commerce. *United States v. Owens*, 167 F.3d 739, 755 (1st Cir. 1999) (stating that a

11

minimal effect on interstate commerce is sufficient to support a conviction). Here, the defendant moved fraud funds from a bank account, into a monetary instrument, and ultimately into cash. This is sufficient to satisfy the jurisdictional element. *See United States v. Laurenzana*, 113 F.3d 689, 693 (7th Cir. 1997) ("The money [the defendant] delivered to the officers did, and in the ordinary course of business would be expected to, enter the flow of commerce. It was both incidental to the transaction and had some effect on interstate commerce.").

Next, the evidence shows that the transaction involved the proceeds of specified unlawful activity, here the proceeds of wire fraud. The fraudulently obtained EIDL loan proceeds were deposited into the A.B. and P.G. accounts and used to purchase the money orders which were later cashed by the defendant. The evidence also supports a finding that the defendant knew that the transactions involved proceeds of unlawful activity, because it was the defendant who obtained the fraud proceeds, the defendant who purchased the money orders with those proceeds, and the defendant who converted those money orders into cash.

Finally, there is probable cause to find that the transactions were designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds. Again, the fraud proceeds originated as deposits into accounts in the name of A.B. and P.G. The funds were used to purchase negotiable money orders. Finally, those money orders were cashed, with the Pay To listed as the defendant and the From listed as either James Miller or James Spencer, with several of the money orders indicating that the payment was for rent. Thus the transactions sought to conceal both the nature and source of the proceeds, making it appear as though the cash were legitimate payment from, for example, James Miller to the defendant for rent payment.

This is sufficient for the Court to find that the defendant violated the terms of his release.

Additionally, the Court need not, but may find that the deposits of the JP Morgan checks into the TD Bank accounts in July 2022 were also concealment money laundering transactions. For example, the G.R. Trust at JP Morgan Chase received deposits of two of the money orders purchased with the EIDL proceeds. The G.R. Trust at Chase only received deposits; the account never withdrew money or transferred money. [Bates 1911-1932; 10241-10250]. When the account was closed, Chase issued a check in the amount of $13,988. That check was deposited at TD Bank on July 25, 2022. [Bates 10510-10511]. The evidence supports a finding that this check included the proceeds of wire fraud, namely the $1,999 in money orders deposited into the G.R. Trust Chase account. That check was deposited at a financial institution which was FDIC insured. *See United States v. Benjamin*, 252 F.3d 1, 9 (1st Cir. 2001) (finding that transactions involving a federally insured financial institution satisfy the requirement that transactions have minimal impact on interstate commerce). And the deposit of the check was designed to conceal the source and nature of the funds. Again, the funds began as EIDL loan proceeds in the names of A.B. and P.G. The money was moved to money orders, then deposited in one account in the name of the G.R. Trust, and finally deposited in a second account in the name of G.R. Trust at a different financial institution. There is probable cause to believe that such activity was designed to disguise the nature of the fraudulent funds and conceal the source, making it more difficult to tie the funds back to the original EIDL disbursement.

All of this is to say that there is more than sufficient evidence for this Court to find probable cause that the defendant has committed numerous violations of the money laundering statute while he has been on release.

    ii.    <u>The Court Should Revoke the Defendant's Release</u>

If the Court finds that there is probable cause to believe that, while on release, the

defendant committed a Federal felony, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b). As articulated by the Government at the January 29, 2024 hearing, the defendant poses both a serious risk of flight as well as a danger to the community. Beyond the continued violations of criminal law, the defendant has been using the proceeds of his fraud schemes to support his lifestyle and even, for a time, fund his legal defense.

The Government explored whether the $13,000 payment to the Gleason Law Office supported its own money laundering offense, however, the statute leaves open legal questions that the Court need not address at this juncture to find that he has violated his release. For example, § 1957(f) has a safe harbor carve-out for transactions "necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution." This raises the question of whether retaining the Gleason Law Office at a time that he had appointed counsel is "necessary to preserve [his] right to representation" under the sixth amendment. Further, a monetary transaction is defined in that statute as the deposit, withdrawal, transfer, or exchange of funds or a monetary instrument, by, through, or to a financial institution. It is an open question as to whether the defendant's transfer of the monetary instruments to the Gleason Law Office, with the intention that they would be deposited at a financial institution is sufficient to meet this element of § 1957. *See United States v. Richard*, 234 F.3d 763, 768 (1st Cir. 2000) (giving criminally derived checks to a co-conspirator, who deposits them into a bank account, is a transfer to, and involves the use of, a financial institution, which satisfies the definition of monetary transaction). Because there is more than sufficient evidence to support a finding of probable cause that other Federal felonies were committed, the Court need not answer these

questions. But the fact that the defendant brazenly used fraud proceeds to pay for his defense in this very case is further evidence that there are no conditions or combination of conditions to protect the public or assure his appearance.

Finally, as set forth at the January 29, 2024 hearing, the defendant has amassed a large sum of money in the form of certified bank checks that can sustain him in flight. As his March 13, 2023 sentencing date approached, he withdrew the funds that he had moved to TD Bank, in the form of bank checks. [Bates 10517-10519, 10552-10554, 10577-10579, 10682-10683]. Of those check, only one check made out to the defendant in the amount of $13,000 was cashed on June 9, 2023. The remaining 5 checks, totally just over $100,000 remain uncashed.

Given the defendant's repeated and continued commission of Federal felonies while on release, combined with his access to various financial accounts, as well as evidence that he has amassed a sum of money capable of sustaining him in flight, there are no conditions or combination of conditions that will assure that he will not flee or pose a danger to the safety of the community. The Court should order the defendant detained pending trial.

Respectfully submitted,

JANE E. YOUNG
United States Attorney

Dated: January 30, 2024     By:     /s/ John J. Kennedy
John J. Kennedy
Alexander S. Chen
Assistant U.S. Attorneys
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552
Alexander.chen@usdoj.gov
John.kennedy2@usdoj.gov